IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LA'PORCHIA STAFFORD,

        Plaintiff,

v.

WB FROZEN, US, LLC,                    (Jury Trial Requested)

        Defendant.

_____/

## COMPLAINT

WB Frozen US, LLC allowed management and Human Resources to discriminate against Plaintiff, La'Porchia Stafford, on the basis of her race. It further ignored the prohibition of state and federal civil rights laws when it retaliated against Plaintiff by terminating her after she repeatedly complained to supervisors and Human Resources of racist and unfair treatment, including a complaint made shortly before WB terminated her. Ms. Stafford brings this complaint of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, and 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

1. This is an action for declaratory and monetary relief caused by Defendant's violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, 3 *et. seq*. ("Title VII"), the Tennessee Human Rights Act, § 4-21-101 *et seq* ("THRA"), and 42 U.S.C. § 1981.

2. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

3. Plaintiff complied with all conditions precedent to the filing of her claims pursuant

to 42 U.S.C.§2000e *et seq.*, to wit: a charge of discrimination against Defendant was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice. The EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

4. Plaintiff, La'Porchia Stafford, an African American female, is a former employee of Weston Foods. Ms. Stafford resided in Nashville (Davidson County) Tennessee at all relevant times. At all relevant times, Plaintiff worked at Defendant's location at 105 Duke Dr., Lebanon, Tennessee, 37090.

5. Defendant WB Frozen US, LLC, ("WB"), formerly registered as Weston Foods US, LLC and upon information and belief is d/b/a Maplehurst Bakeries, is a Delaware Corporation licensed to transact business in Tennessee. The principal office for WB is located in Brownsburg, Indiana. Its registered agent for WB is CT Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546. At all relevant times, WB employed Plaintiff. At all material times, Defendant has been an employer as defined by the Tennessee Human Rights Act and Title VII of the Civil Rights Act of 1964.

## FACTUAL BACKGROUND

6. WB rehired Ms. Stafford on February 1, 2022, as an A-shift Production Associate at the Lebanon location. Ms. Stafford was employed by WB briefly in 2017.

7. WB employs over 100 employees.

8. At the time of Ms. Stafford's hiring, her mother, Sherry Clemmons, was employed at the same WB location.

9. Although Ms. Clemmons is a Line Leader of the A-shift, she does not have control

over employees' discipline, firing, or hiring.

10. Ms. Clemmons' supervisor, Christina Allen, was aware that Ms. Stafford is Ms. Clemmons' daughter. On January 10, 2022, prior to Ms. Stafford's employment, Ms. Allen texted Ms. Clemmons to remind her to, "Tell [your] daughter to check her email or voicemail to schedule interviews."

11. The Production Manager, Devon Ripley, was also aware that Ms. Stafford is Ms. Clemmons' daughter because he worked with Ms. Stafford and her mother during Ms. Stafford's 2017 employment with WB.

12. Ms. Allen contacted Susan Nimmo to pull Ms. Stafford's application and interview her.

13. When WB hired Ms. Stafford, Ms. Allen requested that Ms. Stafford be assigned to the A-shift.

14. While on A-shift, Ms. Stafford worked the fryer position and reported to her Line Lead, Tyrone Debow, not Ms. Clemmons.

15. WB's Employee Handbook states, "[t]o avoid any hint of favoritism or discrimination in making such decisions, the employment of relatives at certain levels of the company, especially in positions where one might have influence over another, is regarded as a potential violation of this policy. Applicants shall not be employed on a continuing basis or be transferred to departments where a relative is already employed."

16. However, this is not WB's practice.

17. During all relevant times, there were several White or Caucasian employees who worked together on the same shift, were related, and could report to one another.

18. However, on or around February 22, 2022, Ms. Stafford's supervisors Ms. Allen

and Jacob Collins informed Ms. Stafford that WB was moving her to C-shift, within a week. The reason for this abrupt change was that she was not allowed to work on the same shift as her mother.

19. Ms. Stafford reported to Ms. Allen and Mr. Collins that White employees who were related to each other were allowed to work on the same shift and that only she, a Black female, was not allowed to work on the same shift as her family. Ms. Stafford specifically referenced Thomas Steelman, a White male, who was allowed to work with his brother.

20. Upon information and belief, WB allowed at least three other pairs of White employees who were related to work together on the same shift, with the potential for reporting to one another.

21. Ms. Stafford complained that this was race discrimination and she should not have to move shifts.

22. Mr. Collins and Ms. Allen informed Ms. Stafford she would still have to move to C-shift.

23. Ms. Stafford had to advocate that she remain on A-shift for two weeks before she changed shifts because the A-shift and C-shift had alternating days off and Ms. Stafford had to arrange childcare.

24. Upon information and belief, Ms. Stafford's C-Shift Manager, Thomas Steelman, was allowed to work on the same shift as his brother, his subordinate, for several years.

25. On or around March 2, 2022, Ms. Stafford complained to Dorcas Wah-Abel, Human Resources, that Ms. Stafford was being discriminated against due to her race, and other White employees were not forced to immediately change shifts despite working with their family.

26. During this meeting, Ms. Stafford also complained that another White employee was harassing her and engaging in a pattern of intimidation.

27. Upon information and belief, WB did not initiate or investigate Ms. Stafford's complaints.

28. When she was transferred to C-Shift, Ms. Stafford's managers, Mr. Steelman, Heather Demps, C-shift Line Lead, and Latoya Bryant, C-shift Line Lead, began moving Ms. Stafford around to several positions, under the guise that Ms. Stafford needed to be cross-trained.

29. However, the fryer on C-shift, a White female, was not required to cross-train.

30. Ms. Demps then began monitoring Ms. Stafford's breaks, exclusively. Ms. Demps did not monitor the breaks of the White employees on her shift.

31. Unbeknownst to Ms. Stafford, on April 20, 2022, Heather Demps, LaToya Bryant, and Adrianna Davis made complaints to Human Resources regarding Ms. Stafford's attitude and performance.

32. On or around April 21, 2022, Ms. Stafford complained to Mr. Steelman that Ms. Demps was discriminating against Ms. Stafford due to her race.

33. Human Resources never interviewed Ms. Stafford regarding any complaints about her performance or provided her with an opportunity to respond.

34. On April 25, 2022, Ms. Stafford spoke to Susan Nimmo, Recruiter and Human Resources, and Hannah Ekeem, Human Resources, to request forms to write a formal written complaint of race discrimination.

35. Ms. Wah-Abel and Robert Newsome, Plant Manager, were in a nearby open office and upon information and belief could hear Ms. Stafford's request for documents to file a formal complaint.

36. The next day, before Ms. Stafford was able to file her complaint, Ms. Wah-Abel and Mr. Steelman terminated Ms. Stafford for "unsuccessful completion of the probationary

period."

37. However, Ms. Stafford was never counseled or provided any feedback regarding any issues with her performance. During her employment, Ms. Allen and Line 5 Lead Tyrone signed off on Ms. Stafford's step-up card, indicating that Ms. Stafford had completed her training successfully.

38. Mr. Ripley, Production Manager, praised Ms. Stafford saying that she was doing a good job and demonstrating how all employees should be performing.

39. According to WB's Handbook, during the probationary period, "Maplehurst needs to evaluate your progress during this period. Strengths and weaknesses will be discussed and helpful feedback regarding your development and progress will be given."

40. The policy further states that "[p]rior to termination, a review of the facts and appropriate approval are required."

41. WB failed to follow any of these steps when it terminated Ms. Stafford.

42. Upon information and belief, since Ms. Stafford's termination the only related employees to be placed on separate shifts are Black employees, and the White related employees remain on the same shift.

## Count I
### (Race Discrimination- Title VII)

43. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

44. It is a violation of Title VII for employers to discriminate against employees based on race.

45. Plaintiff was subjected to a continued discrimination, harassment, and disparate treatment in Defendant's workplace because of her race, African American, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

6

46. Plaintiff reported and/or protested incidents of discrimination and harassment to her managers and to the Human Resources department. Defendant failed to remedy and/or prevent race discrimination in the workplace.

47. Defendant is vicariously liable for the discrimination and harassment perpetrated by management and is liable for failing to remedy harassment in the workplace.

48. Defendant took adverse employment actions against Plaintiff in failing and refusing to investigate her complaints of discrimination and harassment, failing to take prompt remedial action, treating her differently than her similarly situated White co-workers, and in terminating her because of her race. Defendant's actions violated Title VII of the Civil Rights Act of 1964.

49. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

## Count II
### (Retaliation- Title VII)

50. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

51. It is public policy and federal law that employees must be able to exercise their rights under state and federal law without fear of reprisal or penalty from an employer.

52. Plaintiff objected to and protested race harassment/discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

53. Contrary to the public policy and federal law, as well as in violation of Title VII, Defendant retaliated against Plaintiff by subjecting her to a retaliatory hostile work environment and eventually terminating her after she objected to and complained of race discrimination and made multiple complaints of discriminatory treatment by her supervisors.

54. These adverse employment actions were in retaliation for the exercise of her rights to oppose racial discrimination in the workplace.

55. As a result, Plaintiff has been damaged and is entitled to recover damages for suffering emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and loss of earnings and benefits.

## COUNT III
### (Race Discrimination/Harassment under THRA)

56. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

57. Plaintiff was subjected to different terms and conditions of employment on the basis of her race.

58. Plaintiff was subjected to a continuing and on-going campaign of race harassment and discrimination in Defendant's workplace because of her race, African American.

59. Plaintiff reported and/or protested incidents of discrimination and harassment to her managers and to the Human Resources department. Defendant failed to remedy and/or prevent race harassment in the workplace.

60. Defendant is vicariously liable for the discrimination and harassment perpetrated by management and is liable for failing to remedy harassment in the workplace.

61. Defendant took adverse employment actions against Plaintiff in failing and refusing to investigate her complaints of discrimination and harassment, failing to take prompt remedial action, and in terminating her after she repeatedly engaged in protected conduct. Defendant's actions violated the Tennessee Human Rights Act.

62. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

## COUNT IV
### Retaliation under THRA

63. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

64. It is public policy and law of the State of Tennessee that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

65. Plaintiff objected to and protested race harassment/discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under the Tennessee Human Rights Act.

66. Contrary to the public policy and state law, as well as in violation of the THRA, Defendant retaliated against Plaintiff by terminating her after she objected to and complained of race discrimination and made multiple complaints of discriminatory actions made by her supervisor.

67. These adverse employment actions were in retaliation for the exercise of her rights to oppose racial discrimination in the workplace.

68. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## COUNT V
### (Race Discrimination/Harassment under 42 U.S.C. § 1981)

9

69. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

70. Plaintiff is an African American and was singled out for harassment and discrimination on the basis of her race.

71. Upon information and belief, non-Black employees were not subjected to the type of work policies, micromanagement, and conditions of employment that Plaintiff suffered.

72. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## COUNT VI
**(Retaliation under 42 U.S.C. § 1981)**

73. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

74. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

75. It is the public policy and law of the United States that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

76. Plaintiff objected to and protested race harassment/discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under 42 U.S.C. § 1981.

77. In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment in retaliation for exercising her rights under 42 U.S.C. § 1981.

78. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. Defendant terminated Plaintiff after she made multiple complaints of discriminatory treatment and harassment by her supervisors and Human Resources, just a few days after her last complaint. An adverse employment action of termination in such quick temporal

proximity to the protected activity establishes causation. As a result of Plaintiff's complaints and protests of race harassment/discrimination in the workplace, Defendant terminated her employment for a pretextual reason.

79. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests:

1. A jury trial;

2. Declaratory relief that Defendant violated Plaintiff's Civil Rights;

3. Back pay, actual damages and damages for lost benefits;

4. Reinstatement or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Attorneys' fees and expenses;

6. Punitive damages;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled under the law.

Respectfully submitted,

HMC CIVIL RIGHTS LAW, PLLC

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Ashley Shoemaker Walter BPR # 037651

Caroline Drinnon BPR # 037016
HMC Civil Rights Law PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com
caroline@hmccivilrights.com

*Attorneys for Plaintiff*